The opinion of the court was delivered by
White, J.
In March, 1862, Peter Young, through his attorney, James H, Yeazie, instituted suit against Mrs. Jeannette Herriman for *277 the sum of $1093 54. Personal service was made on Mrs. Herriman of this petition; but it seems that issue was never joined thereon during her life-time. In the summer or autumn of 1863 Mrs. Herriman removed to Texas with her family, where she died about January, 1865. On the 14th of March, 1866, John Janney, through his attorneys, Messrs. Sparrow & Montgomery, presented a petition representing the death of Mrs. Herriman, her non-residence, and his belief that her heirs resided in the State; stated that he had been requested by the creditors to apply for letters of administration, for which he asked. Upon this petition the clerk of the district court on the 14th of March, 1866, rendered an order for the publication, for the inventory, and for the appointment of Janney in the event of no opposition. The application was posted, and there being no opposition, and Janney having taken the oath and given bond, he was appointed administrator of the succession of Jeannette Herriman on the 9th of April, 1866. By order of the clerk, on the 28th of July, 1866, an inventory was taken of the effects of the succession of Jeannette Herriman, and the following property was inventoried: “ One eighth part of a tract of land known as the Henry tract, lying on the lower or south side of said tract, containing one hundred and twelve 5-100 acres, acquired from Samuel Garland; also one half of fractional section No. 1, containing sixty-nine 17-100 acres, and fractional section No. 11, containing thirty-one 71-100 acres ; also fractional section No. 12, containing three hundred and fifteen 31-100 acres; the whole containing a tract of five hundred and twenty-eight 64-100 acres, of which is improved -supposed to be about two hundred and sixty acres, appraised at eighteen dollars per acre, amounting to $9506 25. On the 26th of May, 1866, Young, by his attorneys, Mayo & Spencer, revived his suit against Mrs. Herriman by petition against Janney, administrator, who pleaded a general denial, and judgment was rendered after due proof against Janney, administrator, for the amount claimed. On the 3d of March, 1867, Young filed a petition representing the obtaining of his judgment, his non-payment, that the only property of the succession was land which was not productive, that its sale was necessary for the payment of the debts of the succession, and asked that Janney be ordered to show cause why the land should not be sold to pay the debts, and for a new inventory and appraisement of the property. Janney, administrator, answered that having no good cause to show why the prayer should not be granted, he consented to the order to sell as prayed for. On the 10th of June, 1867, the clerk rendered an order directing that as the plaintiff was a judgment creditor of the succession the real estate of the deceased be sold by Janney, sheriff, according to law ; that an inventory and appraisement be made of the property of the succession. This inventory was taken, consisting of the same property previously *278 inventoried, which was appraised, at nine dollars per acre, or $4757 76 for the whole. Under this oidar an authority was issued to the sheriff to sell the property of the succession of Jeannette Herriman, the order containing 'the description of the property as found in the inventory. The real estate was advertised for sale for cash, the advertisement giving the same description as that contained in the inventory and order to sell. There being no bid, the property was re-advertised for sale at twelve months credit. The advertisement being identical with the former, the property was adjudicated to Peter Young for five hundred dollars. The sheriff made return on the order of sale that he bad sold the property described'therein to Young. In making his deed, however, to Young the prbperty was described as follows: “ The one eighth part of a certain tract of land lying and fronting on Black river in said parish, known as the Henry grant, being the south eighth thereof, etc., the words “ being the south eighth thereof,” etc., having been added to the description as contained in the inventory, as mentioned in the order of sale, as published in the advertisement, and as stated in the return of the sheriff. The addition of these words in the deed making it thereupon appear that the sheriff had sold a certain divided eighth, instead of an undivided one, Janney filed a final account by which the succession was shown to be insolvent, which account, although filed on the 12th of October, 1868, remains unhomologated.
Such are the mortuaria proceedings of Mrs. Herriman’s estate, a clear apprehension of which is necessary to the decision of the present suit which is a demand on the part of the heirs of Mrs. Herriman to recover the property from Young, with the rents and revenues, and for damages against Janney, on the following grounds :
First. That Janney never was the administrator of Jeannette Herriman, because at the time of his appointment the heirs were in possession through a duly authorized agent. This ground having been destroyed by the proof, the contrary position has been assumed by counsel; viz.: That Janney was not administrator, because the heirs were absent and unrepresented, no attorney for absent heirs having been appointed.
Second. That no publication of his application for letters was made.
Third. That no inventory was made.
Fourth. That no oath was taken or bond executed.
Fifth. That Young’s judgment is a nullity, not having been contradictorily rendered with an attorney of absent heirs.’
Sixth. That the order of sale was obtained without due notice to the heirs.
Seventh. That the clerk had no power to render the order of sale.
*279 Eighth. That the mortuary proceedings were concocted between Young and Janney for the purpose of despoiling the heirs, were fraudulent in their inception, in their execution and. accomplishment, that the property was sold for a vile price.
Ninth. Tha't the sheriff sold a divided eighth, while the succession was only owner of an undivided one.
In considering these objections we will eliminate primarily the question of fraud in order to examine it in its proper order, thus enabling us to determine the legal aspect of the objections before considering the effect of the fraud, if any, upon the proceedings.
1. There can be no doubt that the heirs of Jeannette Herriman were absentees, that no attorney of absent heirs was appointed to represent them.
But this failure did not affect the validity of the appointment of the administrator, however it might affect his subsequent acts in which it was necessary to make the heirs parties through the attorney of absent heirs. On the face of the proceedings there was no necessity for an attorney of absent heirs. It has been long since held that a necessity for such appointment should be shown before it is made. Robouam’s Heirs vs. Robouam’s Ex., 12 La. 74; Succession of Harris, 29 A. 746. If the heirs were absent, the succession ought, perhaps, to have been administered by a curator, but the mere calling of the person appointed an administrator, when, perhaps, under the true state of facts he should have been called a curator, can have no legal effect upon the validity of his acts. Ford vs. Newcomer, 14 A. 706.
The appointment of Janney by the court fixes his right to the office, at least quoad parties dealing with him as such ; but even were this not the case, the mere non-appointment of the attorney of absent heirs would not render the proceedings absolutely null. Said this court in Gibson vs. Foster, 2 A. 509 : “If it were true that no attorney had been appointed to represent the absent heirs when the decree and order of .sale was made, the decree would not be an absolute nullity by reason of the omission. A curator was the representative of the succession, and. had the capacity to provoke a sale of this property. The act of 1817, making it a duty to prove contradictorily with the attorney of absent heirs that the sale was advantageous and necessary, is merely directory. It contains no prohibitory clause, and although its non-observance might in certain cases subject the curator to damages at the suit of the absent heirs, it constitutes one of those informalities anterior to the judgment which can not be inquired into collaterally.” 2 A. 966. But whatever conclusion might be arrived at on this subject, the validity of the sale to Young would not be affected thereby. It is no longer an open question that the purchaser at a probate sale need not look beyond the de *280 cree ordering the sale for his protection, and that all irregularities anterior to the order are covered by it, at least quoad the purchaser. 11 R. 72 ; 16 La. 440 ; 14 A. 622 ; 18 A, 485 ; 21 A. 505.
These authorities are completely decisive of the remaining objections, but from abundance of caution we will review them seriatim:
2. The application for letters was duly posted. In the absence of a newspaper the posting was sufficient.
3. There was an inventory.
4. There was a bond given for ten thousand dollars and signed by General Sparrow. It is contended that at the time he signed as security he was insolvent; but manifestly the sufficiency of the bond was a matter to be determined by the officer whose duty it was to receive and judge of it. If he took an insolvent security, although we express no opinion thereon, his so doing could not have affected the appointment of the administrator or have destroyed the validity of his acts. The oath was taken ; the pretension of its non-existence results from the following fact: the oath as found in the record has in the body of the oath the name of the succession blank, so that it reads : “ I, John Janney, do solemnly swear that I will well and faithfully do and perform all the duties and obligations imposed upon me by law as the-of the estate--to the best of my understanding and ability. So help me God.” Sworn to and subscribed before me this 9th day of April, 1866. The mere leaving of the blank in the oath as found in the record would not destroy its effect so as to relieve Janney from any of the responsibility resulting from it. It is part of the mortuary proceedings. It was taken by him in order to qualify as administrator. It appears 'to have been taken before the clerk, and the presumption omnia rite •directly covers the oversight which caused the omission in the body of the oath. Ball’s Administrator vs. Ball, 15 La. 173. True, the blank in the oath is not filled up with the name of the succession. That name, however, is set forth in the caption, and the oath is signed by the affiant ■and by the clerk of the court, by whom it was administered, and is immediately on the same paper followed by the appointment in due form.
5. That Young’s judgment was not rendered contradictorily with the heirs.
The citation on the administrator was sufficient. Even had there been an attorney of absent heirs, no citation would have been required on him. The debt was proven contradictorily with the administrator to the satisfaction of the court. Gibson vs. Foster, 2 An. 509. Even if the judgment be only prima facie binding as to heirs, the final account is open to attack, and there is no, even semblance of, proof as to the invalidity of Young’s claim.
6. The heirs were not necessarily parties to the order of sale; if *281 present, notice to them would not have been a prerequisite to its validity. 21 An. 505 ; 24 An. 530 ; 28 An. 633.
7. The clerk had the power to render the order. Woods vs. Lee, 21 An. 507; 12 An. 612.
8. Was the sale a fraudulent one? Were the proceedings concocted for the purpose of depriving the heirs of their property ? We find no evidence whatever to that effect. It is said that Janney knew at the time he applied for the appointment that the heirs were non-residents, although he alleged his belief that they were within the State. Granted, there is no proof that Young so knew. It is contended that the administration was provoked by Young, and therefore there was a privity between Young and Janney. Young had a right to provoke the administration. He was a creditor. It is charged that the attorneys for Young were the attorneys for Janney. The proceeding, in the succession were conducted by Messrs. Sparrow and Montgomery, the attorneys for Janney, while Young seems to have been represented by Messrs. Mayo and Spencer. After the rendition of the judgment in favor of Young, after the sale, after the payment of his claim, the final account seems to have been made in the name of Janney by Messrs. Mayo and Spencer. There is no evidence whatever of any combination or conspiracy. Young contradicts it by his answer and Janney by his testimony.
The property appears to have been sold for its just value, although for less than the appraisement which was made on the twelfth day of June, 1867. But the proof is complete that between the day of the inventory and the date of the sale the property was swept over by a disastrous overflow. One of the witnesses says that he saw the property in the latter part of 1867, and that the water was deep enough to float a steamboat. There is no contravening proof. It is shown that the land in the vicinage was offered for a less price than that brought by the land in controversy. The property was regularly advertised, regularly offered for cash without a bidder, regularly adjudicated to Young at the second offering without there being any proof whatever of any combination by which the obtaining of a just price was prevented.
The bill of exceptions taken to the admissibility of the testimony showing the value of the property, we think, was not well reserved. The charge of fraud clearly made it competent for the parties to show the actual value of the property. The claim that Young was engaged in a conspiracy to defraud the heirs is manifestly destroyed by the proof in the record that the fact of the sale was directly communicated by Young’s attorneys to the husband of the major heir, who was absent.
Mrs. Herriman died in Texas ; her heirs were Laura M. Herriman, *282 wife of Dr. Edward Merrill, and Laura Sarah Herriman, a minor. At her death, she left property in Texas which was taken charge of by Dr. Merrill, her administrator. The record shows that before the sale Judge Mayo advised Dr. Merrill of the proposed sale, and received in reply a letter disclaiming all interest in the succession on account of its insolvency, the letter being as follows :
“ Waco, Texas, June 30, 1867. Your letter came duly to hand; in reply I can only say that I do not see that I can do any thing about the plantation. I am not able to buy it in. The estate is so much involved that I have no idea the place will sell for enough to pay the debts. The only one that it will affect will be Messrs. M. D. Cooper & Co., I suppose. They, I reckon, can afford to give more than any one else.” * *
This acknowledged insolvency was made manifest by the account, and is equally shown to have been the case by the proof in this record. It is worthy of note that there .is no evidence impugning the amount or validity of Young’s debt, and the whole matter as we determine it resolves itself into the simple question of the right of an heir in an insolvent estate administered by an administrator to annul the entire mortuoria because of the non-appoint.ment of an attorney for absent heirs, not only in the absence of all fraud, but in face of the fact that knowledge of the proceedings was conveyed to the husband of the only major heir.
The complaint as to the fact that the sheriff’s deed by the addition of the words “ the south eighth thereof,” made the sale one of a divided instead of an undivided eighth is erroneous. The adj udication and not the deed vest the title. O. 0. 2608 ; O. P. 695. The inventory correctly described the property, as did the order of sale, the advertisement, and the sheriff’s return. The answer of the defendant disclaimed all interest, title, or possession to any but the undivided eighth. The judgment of the lower court was clearly rendered with reference to this admission; it did not quiet the defendant in the title to and possession of the property not bought, but of the one undivided eighth which was sold. The opinion we have formed on the merits dispenses us from passing on the exception filed by Janney.
The judgment is affirmed.
Rehearing refused.
Mr. Justice Spencer being recused takes no part in this decision.